UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CAMP DRESSER & MCKEE, INC. | CIVIL ACTION |
| VERSUS | NO. 10-2864 c/w 11-2131 |
| BENETECH, LLC ET AL. | SECTION "C" (2) |

* * *

| | |
|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND ET AL. | CIVIL ACTION |
| VERSUS | NO. 11-2722 |
| BENETECH, LLC ET AL. | SECTION "C" (4) |

## FINDINGS AND RECOMMENDATIONS

The motion of CDM Constructors Inc. ("Constructors") in Civil Action No. 11-2722, Record Doc. No. 136, and the motion of CDM Smith Inc. (f/k/a Camp Dresser & McKee, Inc.) ("CDM Smith") (collectively the "CDM Parties") in Civil Action No. 10-2864 c/w 11-213, Record Doc. No. 199, to enter judgment and enforce agreements to settle have been referred to me for findings and recommendation by the presiding district judge.  Record Doc. No. 137 in C.A. No. 11-2722; Record Doc. No. 200 in C.A. No. 10-2864 c/w 11-2131.  An evidentiary hearing was conducted on August 27, 2013, during which the court received documents in evidence and heard the testimony of two witnesses, L. Eades Hogue, counsel for the CDM Parties, and W. Aaron Bennett ("Aaron Bennett"), a defendant and counterclaimant in these actions.

Having considered the record, the evidence, the submissions of the parties and the applicable law, and for the following reasons, I find and recommend that the motions should be GRANTED and judgment entered as follows.

I.      PROCEDURAL BACKGROUND

The instant lawsuits arise from the parties' contractual arrangements related to their involvement in construction projects for the United States Army Corps of Engineers, which is not a party. The cases involve contractual disputes between, on one side, the CDM Parties and two surety companies, Fidelity and Deposit Company of Maryland and Zurich American Insurance Company (collectively the "Bonding Companies"), and, on the other side, Benetech, LLC, William J. Bennett ("Bill Bennett," who is the father of Aaron Bennett), and Aaron Bennett.

Trial in these matters was scheduled to begin on Monday, May 20, 2013. Over the weekend before the trial date, counsel for all parties notified the court that they had reached a settlement. Judge Berrigan entered a conditional order of dismissal on May 20, 2013, in which the court retained jurisdiction in the event settlement was not consummated within 60 days. Record Doc. No. 131. The CDM Parties' motions to enter judgment and enforce the settlement agreements were timely filed on July 18, 2013, within the 60-day jurisdictional period provided in the court's conditional dismissal order.

At the evidentiary hearing, counsel for all parties in C.A. No. 10-2864 c/w No. 11-2131 stipulated that Benetech and Bill Bennett have agreed to sign and will execute the final settlement agreement in that case.  Therefore, counsel stipulated to enforcement of the Agreement to Settle signed by Benetech and Bill Bennett (the "Benetech Agreement to Settle," CDM Smith's Exh. B, Record Doc. No. 199-4).  They also stipulated that C.A. No. 10-2864 c/w No. 11-2131 is ready for entry of the judgment proposed by CDM Smith in its motion, provided that the judgment should not be entered until after the judgment in C.A. No. 11-2722 (if one is entered) becomes final and non-appealable.

Thus, the only motion at issue during the evidentiary hearing was Constructors' motion in C.A. No. 11-2722 to enforce the Agreement to Settle signed on May 18, 2013 by <u>counsel</u> for the CDM Parties, the Bonding Companies and Aaron Bennett, and by Aaron Bennett himself (the "Aaron Bennett Agreement to Settle").  CDM Parties' Exh. A to Constructors' motion, Record Doc. No. 136-3; CDM Parties' Exh. 5 introduced at the evidentiary hearing.  Record Doc. No. 156.

Specifically, Constructors asks the court to enforce the Aaron Bennett Agreement to Settle and to enter judgment against Aaron Bennett on grounds that the Agreement to Settle contained all the essential terms of the parties' agreement and is a binding contract, notwithstanding that a final settlement document was never executed because Aaron Bennett refused to sign it.  Bennett, who is now proceeding pro se, responds that the

Aaron Bennett Agreement to Settle acknowledges that the final Settlement Agreement will contain additional terms and conditions.  He argues that the parties never negotiated or finalized three specific conditions that he claims were still outstanding when he signed the Aaron Bennett Agreement to Settle on May 18, 2013, and that it was never his intent to settle the case without those three conditions being included.  He contends that he did not sign the final Settlement Agreement because Constructors refused to negotiate with him in good faith to finalize these issues and that the Aaron Bennett Agreement to Settle is therefore not a binding and enforceable contract.

The three significant issues that Bennett argues remained after the parties executed the Aaron Bennett Agreement to Settle are set forth in his declaration under penalty of perjury filed in response to Constructors' motion to enforce the agreement, Record Doc. No. 138, which was introduced into evidence at the hearing as the CDM Parties' Exhibit 10.  Those issues are:  (1) Bennett claims he never agreed to settle if the CDM Parties insisted on judgment being entered against his father personally.  Because the Aaron Bennett Agreement to Settle has no discussion of his father's liability and because the CDM Parties refused to negotiate with him about this issue after the agreement was signed on May 18, 2013, he argues that the Aaron Bennett Agreement to Settle is not final and enforceable.  Id. at p. 1.  (2) Aaron Bennett "was concerned about making sure this judgment [against himself] could be discharged in bankruptcy," and that concern was

4

not settled.  Id.  (3) He believes there are several ways that the CDM Parties can recover money from entities that are not parties in these lawsuits.  He wants the Settlement Agreement to require that the CDM Parties pursue those sources or, alternatively, he wants the other sources excluded from the CDM Parties' claims against him to allow him or Benetech to pursue those sources.  Id. at p. 2.

II.   THE APPLICABLE LAW

Louisiana substantive law controls in this action based on diversity jurisdiction. In re Katrina Canal Breaches Litig., 495 F.3d 191, 206 (5th Cir. 2007); Yaukey v. Teachers Ins. Co., No. 07-291, 2009 WL 1211033, at *3 (E.D. La. May 4, 2009) (citing Lockette v. Greyhound Lines, Inc., 817 F.2d 1182, 1185 (5th Cir. 1987)).

> Louisiana Civil Code article 3071 provides:  "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."  . . . .
> According to the cited civil code articles and jurisprudence, for a settlement agreement to be valid and enforceable, it must either be recited in open court and capable of being transcribed from the record of the proceeding or be in writing and signed by the parties or their agents. . . . [T]he law strongly favors compromise agreements between parties.

City of Baton Rouge v. Douglas, 984 So. 2d 746, 748 (La. App. 1st Cir. 2008) (citing Sullivan v. Sullivan, 671 So. 2d 315, 317-18 (La. 1996); Trask v. Lewis, 258 So. 2d 603, 605 (La. App. 1st Cir. 1972)); accord Trahan v. Coca Cola Bottling Co., 894 So. 2d 1096, 1104 (La. 2005).

5

A compromise agreement, like other contracts[,] is the law between the parties and must be interpreted according to the true intent of the parties.  The party attempting to rely on the existence of a compromise agreement "bears the burden of proof to show that the requirements for a valid compromise are present."

Yaukey, 2009 WL 1211033, at *4 (citing Suire v. Lafayette City-Parish Consol. Gov't, 907 So. 2d 37, 55 (La. 2005); Trahan v. Coca Cola Bottling Co., 894 So. 2d 1096, 1106 (La. 2005)).

The United States Court of Appeals for the Fifth Circuit has held that Louisiana law recognizes the enforceability of preliminary agreements.

The settled jurisprudence of this State is that an agreement between parties, where their minds have met upon all essentials, constitutes a contract between them and binds them at once although they may have agreed that they would thereafter execute a formal instrument containing the terms of their present agreement.

Mermelstein v. Schwab, 64 So. 2d 37, 38 (La. Ct. App. 1953).  A so-called preliminary agreement may be binding, even though it refers to a future written agreement finalizing its contents.  Chevron U.S.A., Inc. v. Martin Exploration Co., 447 So. 2d 469 (La. 1984).  In Martin Exploration, the Louisiana Supreme Court noted that use of the word preliminary "does not preclude the agreement from being final until later agreements are reached, or from being the only agreement in the event no other agreements are confected."  Id. at 472.  Moreover, the court found that the reference to a document "finalizing the points listed above" did not evince an intent to be bound only upon the execution of a later instrument.  Id.  Nor did an allusion to future "negotiations" render the preliminary agreement non-binding.  To the contrary, the Supreme Court of Louisiana held that the document was binding as that interpretation most accurately reflected the intentions of the parties.  Id.

Thus, whether a binding obligation existed upon the execution of the letter of intent of January 9, 1985, or only upon the execution of a later,

> more comprehensive document, depends upon the intentions of the parties. <u>Courtin v. Sharp</u>, 280 F.2d 345, 349 (5th Cir. 1960) . . . (citing <u>Mermelstein</u>); <u>cf.</u> La. Civ. Code Art. 1947 (West 1987) (certain form of contract execution required if contemplated by the parties). The parties' intent is a question of fact. <u>See</u> <u>Trinity Carton Co. v. Falstaff Brewing Corp.</u>, 767 F.2d 184, 190 (5th Cir. 1985) . . . .
>
> . . . .
>
> The Supreme Court in <u>Martin Exploration</u> considered the actions of the parties taken subsequent to the agreement in dispute as a basis for inferring the parties' intentions. <u>Martin Exploration</u>, 447 So. 2d at 472.

<u>Newport Ltd. v. Sears, Roebuck & Co.</u>, 6 F.3d 1058, 1065 (5th Cir. 1993) (emphasis added).

## III.   <u>THE EVIDENCE</u>

The CDM Parties' Exhibit 5 is the Aaron Bennett Agreement to Settle. The parties to the agreement are Aaron Bennett, the CDM Parties and the Bonding Companies. Bennett testified that he signed the agreement, as did David I. Courcelle, who was his attorney of record at the time. Although the agreement is not dated, the fully credible testimony of Eades Hogue, counsel for the CDM Parties, establishes that it was signed on May 18, 2013, the Saturday before the scheduled trial date. <u>See also</u> CDM Parties' Exh. 7, e-mail from Courcelle to counsel for the other parties dated May 18, 2013 at 10:21 a.m., transmitting the Aaron Bennett Agreement to Settle, which has been "executed by Aaron and I. . . .  I will leave it to you guys as to when to contact [the judge's law clerk.]  Please keep me in the loop as I am intending to fly out of town tomorrow as a result of this settlement.")

7

The Aaron Bennett Agreement to Settle contains the following provisions relevant

to the instant motion to enforce:

As a resolution of all claims currently existing among the Bonding Companies, [CDM Smith, Constructors], and Aaron Bennett . . . [the Parties] . . . agree, subject to paragraph 5 hereof, to enter into a settlement agreement (the "Settlement Agreement") resolving the claims and disputes among them and containing the following primary terms:

1.      The Parties consent to the entry of judgment in Civil Actions No. 11-2722 and 10-2864 (c/w 11-2131) . . . against Aaron Bennett and in favor of [Constructors] for the cumulative amount of 9.2 Million Dollars ($9,200,000.00) (the "Consent Judgments"). All other claims asserted in the pending litigation will be dismissed with prejudice.

2.      All Parties agree that the entry of the Consent Judgments and the execution of this Agreement to Settle (the "Agreement") (and the final Settlement Agreement) is and will be without prejudice to the rights of any of the Parties to assert or to deny that the claims of any Party against any Party constitute non-dischargeable claims in a subsequent bankruptcy of any such Party. The Parties agree that the Consent Judgments and the Settlement Agreement do not and are not intended to determine the issue of the dischargeability of any of the claims of any Party against any other Party.

3.      [Constructors, CDM Smith], and Aaron Bennett mutually agree to release one another (and all of their respective affiliates, parents and subsidiaries, agents, employees and attorneys) from any and all claims, known or unknown, now existing, of any type whatsoever other than those claims preserved in the Consent Judgments, this Agreement or the Settlement Agreement.

4.      . . . .

5.      The Parties agree that this Agreement to Settle lists the primary terms and conditions to be included in the Settlement Agreement. The Parties acknowledge that the Settlement Agreement will contain terms and conditions in addition to those listed herein. The final agreement of the Parties to

settle the matters addressed herein is <u>conditioned upon and
subject to the agreement of the Parties to the final terms of
and the execution by the Parties of the final Settlement
Agreement</u>.  The Parties agree to undertake in good faith to
finalize the terms of and execute the Settlement Agreement
within thirty (30) days from the date hereof.

CDM Parties' Exh. 5 (emphasis added).

The undisputed Benetech Agreement to Settle between Benetech, Bill Bennett, the
CDM Parties and the Bonding Companies, which is signed by counsel for all of these
parties, is also in the record.  CDM Parties' Exh. 1.  Like the Aaron Bennett Agreement
to Settle, the Benetech Agreement to Settle includes a consent to entry of judgment in
Civil Action Nos. 11-2722 and 10-2864 (c/w 11-2131) and a statement that all other
claims asserted in these actions will be dismissed with prejudice.  However, this
agreement provides that judgment in the amount of $9,200,000 is to be entered in favor
of Constructors against <u>Bill</u> Bennett and Benetech.  Paragraph 3 of the Benetech
Agreement to Settle is identical to paragraph 2 of the Aaron Bennett Agreement to Settle
regarding dischargeability in bankruptcy.

Paragraphs 5 through 8 of the Benetech Agreement to Settle concern amounts that
Benetech promises to remit to Constructors, if Benetech receives any future payments
from the specified sources.  These include a project for the Army Corps of Engineers
called OSP-08, which Benetech intends to finish.  Benetech agrees to pay Constructors
the net proceeds from that project when completed, after Benetech satisfies certain

9

liabilities, some of which are specified in the agreement and some of which remain to be identified.  All parties make certain promises concerning Benetech's conduct of that project.  These paragraphs also contains representations regarding Benetech's pending lawsuit against Winter Park Corporation (a non-party to the instant litigation) and Benetech's promises to pay to Constructors any net amounts recovered from that lawsuit. Paragraph 10 provides that Benetech will "promptly remit" to Constructors any payments or proceeds it receives that are not related to the OSP-08 project or the Winter Park lawsuit.  Paragraph 12 contains terms regarding Constructors' execution of the Consent Judgments against Bill Bennett and Benetech.  Paragraph 13 of the Benetech Agreement to Settle is identical to paragraph 5 of the Aaron Bennett Agreement to Settle.

Hogue testified that the Benetech Agreement to Settle was also signed on May 18, 2013.  He said that counsel called the presiding district judge's law clerk the same day to advise her that the parties had settled, and that the trial set for Monday was cancelled. He stated that both Agreements to Settle were the result of exhaustive and extensive settlement negotiations that preceded execution of the documents.

Hogue testified that, following execution of the two Agreements to Settle, the parties began to formulate the final settlement documents.  The CDM Parties' Exhibit 8 is an e-mail dated July 12, 2013 from Hogue's partner, James C. Butler, to all counsel and Bennett, transmitting the draft proposed Settlement Agreement and noting that all

documents must be signed before expiration of the 60-day dismissal order.  Bennett

responded by e-mail on July 15, 2013 that he had several problems with the documents,

which he said he had "made clear in ameeting [sic] with eads [sic] and also by email to

eads [sic]," and suggesting another meeting to discuss his concerns.

Concerning the first condition in paragraph 2(a) of Bennett's declaration, CDM

Parties' Exh. 10, Hogue testified that Aaron Bennett told him that he did not want to have

judgment entered against his father, Bill Bennett.  Hogue said he told Aaron Bennett,

"that was impossible," and told him that there would be no settlement without a judgment

against Bill Bennett, to which Bill Bennett himself agreed.  Hogue stated that this

conversation occurred before May 18, 2013.

As to the second condition in paragraph 2(b) of Bennett's declaration, Hogue

testified that, before execution of the Aaron Bennett Agreement to Settle on May 18,

2013, Aaron Bennett wanted the CDM Parties to agree that any judgment against him

would be dischargeable in bankruptcy.  Hogue testified that "I refused" to agree to this

condition and that he told Aaron Bennett that any settlement would include a term that

the CDM Parties would be able to challenge any claim that the judgment was

dischargeable.

Regarding paragraphs 2(c) and 3 of Bennett's declaration, Hogue stated that Aaron

Bennett discussed with him before May 18, 2013 some sort of agreement for collecting

funds that Bennett said were owed to him by Plaquemines Parish.  Hogue testified that

he told Bennett that his clients would not agree to this and would not participate with him

in trying to collect any unpaid funds, such as those set out in paragraph 2(c).  Hogue said

he told Bennett that the CDM Parties would not settle if the proposed agreement included

any conditions about pursuing the amounts contained in paragraphs 2(c) and 3 of

Bennett's declaration.

Hogue testified convincingly that his position has been the same throughout the

settlement process.  He stated that all of the issues that Aaron Bennett identifies in his

declaration as open issues were actually closed issues, which had been discussed and

refused by the CDM Parties prior to execution of the Aaron Bennett Agreement to Settle

on May 18, 2013.  He testified that no open issues remained to be resolved as of that

date.

On cross-examination, Hogue confirmed that Aaron Bennett had expressed

problems with some aspects of their settlement during their negotiations.  Hogue recalled

that, at a meeting in November or December 2012, Aaron Bennett had referred to

wanting to collect "pots of money" that could be pursued from the Corps of Engineers.

Hogue stated that he received an e-mail from Aaron Bennett after that meeting, in which

Bennett stated that he could not agree to the entry of a judgment against his father.

Hogue repeated that he unequivocally told Bennett, "No," in response to that request.

Hogue testified that Bennett acquiesced to the CDM Parties' refusals to include these conditions in their settlement by signing the Aaron Bennett Agreement to Settle after discussions of these proposed terms had occurred.  He stated that, despite the language of paragraph 5 of the Aaron Bennett Agreement to Settle, there were no outstanding terms with respect to Aaron Bennett on May 18, 2013 and that the parties did not agree that there would be any additional substantive items included in the final Settlement Agreement with Bennett.

Hogue testified that, as the <u>Benetech</u> Agreement to Settle stated in its paragraph 13, there were additional conditions that would be included in the final <u>Benetech</u> Settlement Agreement.  Hogue said that these additional terms were negotiated with Salvador Bivalacqua, counsel for Benetech and Bill Bennett, primarily regarding the judgment creditors' agreement to forego execution of judgment on other contracts in which Benetech had an interest.

Bennett testified on cross-examination that he signed the Aaron Bennett Agreement to Settle and that he authorized his attorney, David Courcelle, to sign it.  On direct examination, Bennett testified that e-mails in the record dating back to 2011[1] indicate that he has been dealing with the three issues in his declaration for years.  He testified that these e-mails were attached to his motion to continue the evidentiary

---

[1] Bennett testified that these went back to <u>2001</u>.  However, the earliest e-mail in the record is dated September 29, <u>2011</u>.  It is apparent that Bennett misspoke the year.

hearing.   Record Doc. No. 142.   All of these e-mails pre-dated the May 18, 2013 execution of the two Agreements to Settle.

Aaron Bennett testified that he believes there is "a large pot of money" that could offset the losses in the instant case, if someone would pursue it.  He stated that he made clear every time settlement documents were circulated among the parties that he had problems that needed to be addressed, but that no e-mails in the record demonstrate that the CDM Parties negotiated with him about these issues.  The e-mail dated September 29, 2011 includes a draft letter from counsel for Benetech and Bill Bennett that was sent to Aaron Bennett and concerns the proposed inclusion in any settlement discussions in C.A. No. 10-2864 of disputes outside the litigation regarding Benetech's subcontract for work on the Plaquemines Parish Sheriff's Office jail facility.

Bennett testified that he had entered only into an "agreement to agree" with the other parties in May 2013 and that his understanding of the Aaron Bennett Agreement to Settle was that additional terms would be included in the final settlement agreement. He stated that Hogue told him in an e-mail on May 15, 2013 that his concerns would be addressed.  He said that the CDM Parties did not engage in good faith settlement efforts after he signed the Aaron Bennett Agreement to Settle and that, although he made himself available to the CDM Parties' counsel, he barely received a response and was never given a meeting after May 18, 2013.

The e-mails to which Bennett referred in his testimony consist of correspondence between him and Hogue.  They are attached to his motion to continue and declaration under penalty of perjury filed in the record on August 2, 2013 as Attachment 3.  Record Doc. No. 142 at pp. 5-11 (internal pagination is pp. 1-5).

These e-mails show that Hogue and Bennett arranged to meet on May 14, 2013. Bennett e-mailed Hogue later in the day, saying that "After further thought, I must insist that my father be left alone.  No consent judgement.  Getting one from Benetech an[d] myself will have to suffice."  Id. at p. 6.

Hogue quickly replied the same day, "No.  [A]ny agreement must include [M]r. [Bill B]ennett."  Id.  In an e-mail later that day, Hogue indicates that he had been talking to Aaron Bennett's attorney, David Courcelle, and that "hopefully everything will work out."  Id. at p. 7.  Aaron Bennett replied, "Send me a draft agreement once you settle all issues with Benetech.  It appears [CDM] does not see any advantage in rewarding my silence and my friendship on the issues we discussed.  They will never get money from my dad.  It will be very stressful for him to have that over him."  Id.  Hogue responded, "Will keep you posted and talk to you about dad in the morning.  I think I can relieve your concerns."  Id.

Hogue's follow-up e-mail the morning of May 15, 2013 stated:

Any settlements we reach in the [B]enetech suits are not intended to reward my client for your silence on any issue whatsoever.  You are free to speak

15

to anyone on any subject whatsoever. . . .  Having said that, I do want you to be on standby to review any draft settlement papers that may be dsicussed [sic] among the parties.  <u>I think you will see that a global settlement with all the [B]enetech parties will satisfy your interests.</u>

<u>Id.</u> at p. 8 (emphasis added).  Bennett replied, "Understood.  I am standing by[.]"  <u>Id.</u>

Bennett testified that his interests were not satisfied and that he never agreed to any final terms to settle the dispute.  He stated that his "agreement to agree" was based on his understanding that he and Hogue would have additional discussions, which never happened.  He interpreted the emphasized language in the May 15th e-mail to mean that issues he had raised remained to be negotiated.

IV.    <u>FINDINGS AND CONCLUSIONS</u>

The court credits Hogue's testimony in its entirety.  His bearing, background, demeanor, obvious sincerity, total professionalism and clear and straightforward manner of testifying convince me of his truthfulness.  His demeanor and manner of testifying were calm, detailed and specific.   The contemporaneous documentary evidence corroborates his testimony.

Aaron Bennett's testimony was inconsistent with the documentary evidence, evasive and not credible.  His bearing, demeanor and manner of testifying exhibit either a lack of understanding of what the parties were doing when they negotiated, drafted and signed the Aaron Bennett Agreement to Settle while he was represented by counsel, or a deliberate attempt to re-negotiate more favorable terms by refusing to execute the final

16

Settlement Agreement.  He engaged in obfuscation when he called the plainly titled "Agreement to Settle" an "agreement to agree."

Aaron Bennett is hereby specifically notified that the court takes judicial notice pursuant to Fed. R. Evid. 201 that he has pled guilty in this court and is awaiting sentencing on two counts of (1) conspiracy to commit bribery of a public official in connection with a program receiving federal funds, and (2) bribery of a public official in connection with a program receiving federal funds, in connection with a contract between Benetech and the Plaquemines Parish Sheriff's Office.  United States v. Bennett, Crim. Action 11-253, Record Doc. Nos. 16, 17.  In addition to my other findings relating to Aaron Bennett's lack of credibility, the court has taken this evidence of Bennett's dishonesty into account in assessing his credibility.  See United States v. Jefferson, 623 F.3d 227, 234 (5th Cir. 2010) (quoting United States v. Williams, 642 F.2d 136, 140 (5th Cir. 1981)) ("[C]onvictions for bribery are crimes involving dishonesty.  '[B]ribery is a crimen falsi in that it involves dishonesty . . . .  Hence, it is automatically admissible [under] Fed. R. Evid. 609(a)(2).'").  Aaron Bennett is hereby specifically notified that if he seeks to be heard further concerning this judicial notice, he must provide his position and any sworn statements on this issue within the 14-day period for filing objections set out in the last paragraph of this recommendation.  Fed. R. Evid. 201(e).

Although Bennett testified that the three issues stated in his declaration were never resolved prior to his execution of the Aaron Bennett Agreement to Settle and that he understood it to be merely an "agreement to agree" with substantial additional terms still to be negotiated, I find this testimony evasive, not credible and a deliberate attempt to obfuscate.  The contemporaneous e-mails on which Bennett relies, the Agreement to Settle and Hogue's credible testimony all contradict Bennett's assertions.  The credible evidence establishes that he was aware of and agreed to be bound by the terms of the Aaron Bennett Agreement to Settle.

All of the three issues that Bennett now claims were never resolved were raised by him and unambiguously rejected by Hogue before the parties' execution of the Aaron Bennett Agreement to Settle.  Aaron Bennett signed the Agreement to Settle knowing that the CDM Parties had refused to include any of the three conditions and knowing that the Agreement to Settle included the primary terms and conditions of the parties' agreement.

As to the first issue, <u>Bill</u> Bennett agreed to have a judgment entered against him when he executed the Benetech Agreement to Settle.  The parties to that agreement stipulated at the evidentiary hearing that all remaining terms had been finalized and Bill Bennett had agreed to sign the final Settlement Agreement.  Aaron Bennett was in no position to contest the entry of judgment against his father, who was represented by

separate counsel.  When Aaron Bennett raised his concern that there should be no judgment against his father during negotiations leading to the two Agreements to Settle, Hogue firmly rejected it in writing in the e-mail dated May 14, 2013.  That issue was fully resolved by Hogue's rejection of Aaron Bennett's condition and by Bill Bennett's own agreement to have judgment entered against him.  The Benetech Agreement to Settle includes clearly negotiated terms protecting Bill Bennett from judgment execution against certain of his enumerated assets, CDM Parties' Exh. 1 at ¶ 4, a factor that corroborates Hogue's independently credible testimony concerning the pre-agreement negotiation and resolution of this issue.  The absence of any term regarding judgment against Bill Bennett in the Aaron Bennett Agreement to Settle was plain when Aaron Bennett signed it and was consistent with what the parties had previously stated.  That position was final when Aaron Bennett both signed personally and authorized his attorney to sign on his behalf, indicating his intent to be bound by the agreement.  It was not an outstanding issue that remained to be negotiated.

The second issue of dischargeability in bankruptcy of any judgment against Bennett was raised before the Aaron Bennett Agreement to Settle was executed, and Hogue plainly rejected Bennett's position regarding that issue.  The dischargeability question was actually included and fully resolved in paragraph 2 of the Aaron Bennett Agreement to Settle.  There is no credible evidence that this issue was left open for

19

further negotiations, and Aaron Bennett's unbelievable testimony in that regard must clearly be rejected.

Before he executed the Aaron Bennett Agreement to Settle, Aaron Bennett also clearly raised the third issue regarding "other pots of money" that might be collected from other sources.  Hogue rejected in no uncertain terms the inclusion of any such provision in the Aaron Bennett Agreement to Settle.  However, terms regarding that issue were included in Paragraphs 5 through 8 of the Benetech Agreement to Settle.  There were no outstanding issues to be negotiated with Aaron Bennett regarding other sources of money when he signed the Aaron Bennett Agreement to Settle.

Hogue's e-mailed statements to Bennett that "I think I can relieve your concerns" and "I think you will see that a global settlement with all the [B]enetech parties will satisfy your interests" are consistent with his testimony and the written agreements of the parties.  These statements, viewed in light of all the evidence, do not support Bennett's mischaracterization that he only entered into an "agreement to agree" and that the three issues remained to be negotiated.  There is no credible evidence that the CDM Parties "tricked" Bennett into signing, as he argued at the evidentiary hearing.  Rather, the credible evidence, including the provisions of the two Agreements to Settle, fully supports Hogue's testimony that all three issues had been raised and resolved against

20

Bennett's current position before he and his attorney signed the Aaron Bennett Agreement to Settle.

Constructors has borne its burden of proof to show that the requirements for a valid compromise are present. Under Louisiana law, Bennett signed a binding and enforceable contract that included the essential terms of the parties' agreement and deliberately excluded any terms that had been previously raised by Bennett, and which Hogue had clearly rejected.

The Aaron Bennett Agreement to Settle was <u>not</u> an agreement to negotiate further to <u>attempt</u> to reach a settlement. The acknowledgment "that the [final] Settlement Agreement will contain terms and conditions in addition to those listed herein," Constructors' Exh. 5 at ¶ 5, "did not evince an intent to be bound only upon the execution of a later instrument. Nor did an allusion to future 'negotiations' render the [Agreement to Settle] non-binding." <u>Newport Ltd.</u>, 6 F.3d at 1065. Bennett's requests to continue negotiating the terms of a settlement after he signed the agreement were not granted by counsel for the other parties because no conditions remained to be negotiated with him. The Aaron Bennett Agreement to Settle is an enforceable contract according to its terms.

<u>**RECOMMENDATION**</u>

For all of the foregoing reasons, **IT IS RECOMMENDED** that the motion of CDM Constructors Inc. to enter judgment and enforce agreements to settle in Civil

Action No. 11-2722, Record Doc. No. 136, be **GRANTED** and that judgment be entered in favor of CDM Constructors Inc. and against Benetech, LLC, William J. Bennett and William Aaron Bennett, in solido, with respect to the claims asserted by CDM Constructors Inc. in this action in the amount of $9,200,000.00 (nine million, two hundred thousand and no/100 dollars), plus interest accruing thereon at the judicial interest rate from and after the date of entry of judgment until paid in full, and that all other pending claims made in any of the pleadings filed in this action, including, without limitation, the claims asserted in the complaint, counterclaims and third-party complaints are DISMISSED WITH PREJUDICE in their entirety.

**IT IS FURTHER RECOMMENDED** that the motion of CDM Smith Inc. (f/k/a Camp Dresser & McKee, Inc.) in Civil Action No. 10-2864 c/w 11-213, Record Doc. No. 199, to enter judgment and enforce agreements to settle be **DISMISSED AS MOOT** and that judgment be entered in those actions DISMISSING WITH PREJUDICE all pending claims made in any pleadings filed in the actions including, without limitation, the claims asserted in the complaint, counterclaims and third-party complaints. Consistent with the agreement of the parties to the consolidated actions expressed during the evidentiary hearing, this **judgment should <u>not</u> be entered until <u>after</u> the judgment in Civil Action No. 11-2722 has become final and non-appealable**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation, including in this case any failure to offer statements or a position concerning judicial notice of Aaron Bennett's criminal convictions, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____5th_____ day of September, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY:**
**HON. HELEN G. BERRIGAN**
**ALL COUNSEL OF RECORD AND**
**W. AARON BENNETT (pro se) at**
**Nelson Coleman Correctional Center**
**5061 Hwy. 3127**
**Killona, LA 70057**

---

[2]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

23